UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARID MASHIRI, an individual )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>OCWEN LOAN SERVICING, LLC., and )<br>DOES 1 though 25 )<br>)<br>Defendants. )<br>) | Civil No. 3:12-cv-02838-L-MDD<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** [doc. #23] |

On June 25, 2013, Plaintiff Farid Mashiri filed his First Amended Complaint against Defendant Ocwen Loan Servicing, LLC. Defendant now moves to dismiss Plaintiff's causes of action under the Telephone Consumer Protection Act ("TCPA") and the Real Estate Settlement Procedures Act ("RESPA"). The motion has been fully briefed and the Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* CIV. L.R. 7.1(d)(1). [doc. #24] For the following reasons, the Court **DENIES** Defendant's motion to dismiss.

**I.    BACKGROUND**

Plaintiff Farid Mashiri, a debtor residing in San Diego, California, brings this action against Defendant Ocwen Loan Servicing LLC. ("Ocwen"), a limited liability company conducting and engaging in business in the County of San Diego. (FAC ¶ 2–4.) Defendant filed a motion to dismiss Plaintiff's complaint for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6), which was denied on June 21, 2013.  (Doc. 15.)  Prior to the Court's Order denying the motion to dismiss, Plaintiff filed a new complaint with additional claims against the Defendant in San Diego Superior Court on April 1, 2013.  (*Mashiri v. Ocwen Loan Servicing, LLC*, Case No. 37-2013-00041939-CU-MC-CTL.)  On May 22, 2012, Defendant removed that action on the basis of federal question and diversity jurisdiction.  On June 21, 2013, this Court issued a consolidation order and granted Plaintiff leave to file an amended complaint asserting all causes of action he wished to pursue.  (Doc. 16.)  Plaintiff filed his First Amended Complaint with the Court on June 25, 2013.  (Doc. 18.)

In February 2004, Plaintiff purchased a home and gave a Deed of Trust secured by an Adjustable Rate Note to WMC Mortgage Corp.  (FAC ¶ 12.)  Five years later, Plaintiff was laid off from his job of 14 years and sought to obtain a loan modification.  (*Id.* ¶ 14.)  Plaintiff alleges that his attorney at the time advised him to stop paying his mortgage payment in an attempt to show hardship.  (*Id.*)  Plaintiff followed that advice and stopped making his mortgage payments in March of 2009.  (*Id.*)  His mortgage went into default as a result.  (*Id.* ¶ 15.)  On June 17, 2009, a notice of default was filed, followed by a notice of sale on September 21, 2009. (*Id.* ¶ 15; Request for Judicial Notice Ex. A and Ex. B.)[1]

In October 2009, Plaintiff was diagnosed with stage four stomach cancer and became unable to care for himself.  (FAC ¶ 16.)  Plaintiff's property was set to be sold in early December 2009; however, a few days prior to the sale, a family member paid an amount requested by Litton Loan, Plaintiff's prior loan servicer, to take Plaintiff's home out of foreclosure.  (*Id.* ¶ 19.)  The amount paid was sufficient to prevent the foreclosure, but not enough to cure the default. (*Id.*)  Plaintiff began making monthly mortgage payments under a temporary repayment plan, but was unsuccessful in obtaining a loan modification.  (*Id.* ¶ 20.)

---

[1] Defendant Ocwen requests judicial notice of two documents, both of which have been recorded in the Official Records of San Diego County: 1) Deed of Trust executed by Plaintiff on September 7, 2005, and 2) Notice of Default. The Court may take judicial notice of "matters of public record" under Federal Rule of Evidence 201.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)). Accordingly, the Court **GRANTS** Defendant's request and will consider the contents therein.

In September 2011, Defendant Ocwen took over the servicing of Plaintiff's mortgage and began collecting on the debt in October 2011. (FAC ¶ 21.) Plaintiff alleges that while he continued to make his mortgage payments, he did not know how his debt was being calculated because he never received an explanation from the Defendant. (*Id.*) On August 28, 2012, Plaintiff allegedly sent Defendant a letter stating that he previously requested a verification of his debt and that he disputed the debt owed based on inconsistent account statements and charges. (*Id.* ¶ 23.) Plaintiff informed the Defendant to cease all communication with him regarding the debt and to direct all inquiries and contacts to his attorney. (*Id.*) Plaintiff's letter also informed the Defendant that he no longer consented to receiving calls to his cellular phone regarding the debt. (*Id.*) Defendant allegedly never provided Plaintiff with what he requested, but rather continued to contact him via his cellular phone at least twice a day, everyday. (*Id.* ¶ 24.) Plaintiff alleges that the Defendant repeatedly called his cellular phone using an automatic dialing system or artificial/prerecorded voice to initiate the telephone calls. (*Id.* ¶ 25.) Plaintiff further alleges that he incurred charges for each call from the Defendant. (*Id.*)

On September 10, 2012, Plaintiff's new attorney, Bashir Ghazialam, Esq., mailed a letter to Defendant Ocwen requesting that all communication regarding the debt be addressed to him as Plaintiff's legal counsel. (FAC ¶ 25; Ex. 1.) The letter also requested that Defendant send him an account statement and breakdown of charges in light of the inconsistent statements Plaintiff received. (*Id.*) Plaintiff's attorney also requested that Defendant stop calling Plaintiff's cellular phone because Plaintiff was incurring charges for each call. (*Id.*) Defendant allegedly never responded to the written request from Plaintiff's attorney, and continued to call Plaintiff twice a day, everyday, on his cellular phone. (*Id.* ¶ 26.)

On October 1, 2012, Plaintiff's attorney sent a second letter reemphasizing the original requests of the Defendant: to stop contacting Plaintiff directly and to send an account statement and breakdown of charges. (FAC ¶ 27; Ex. 2.) According to Plaintiff's attorney, he was never provided with the requested information and Defendant continued to contact Plaintiff daily. (*Id.* ¶ 28.) Allegedly, Defendant called Plaintiff's cellular phone approximately over 100 times between September 2012 and October 31, 2012. (*Id.*) Plaintiff also received a letter from the

Defendant dated October 25, 2012, attempting to collect the debt.  (*Id.*; Ex. 3.)

Plaintiff's First Amended Complaint alleges fourteen causes of action under federal and state law. Defendant moves to dismiss Plaintiff's twelfth and thirteenth causes of action, claims under the Telephone Consumer Protection Act (TCPA) and the Real Estate Settlement Procedures Act (RESPA) respectively.

## II.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court must accept all allegations of material fact as true and construe them in the light most favorable to the nonmoving party.  *Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).  Material allegations, even if doubtful in fact, are assumed to be true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks omitted).  In fact, the court does not need to accept any legal conclusions as true.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal citations omitted).  Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Id.*  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id.* A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

## III. DISCUSSION

### A. Telephone Consumer Protection Act

Defendant Ocwen seeks dismissal of Plaintiff's TCPA claim, arguing that (1) the TCPA does not apply to calls from debt collectors, (2) Plaintiff failed to adequately plead that an automatic telephone dialing system was used, and (3) Plaintiff expressly consented to being contacted about his debt. The Court discusses each argument in turn.

#### 1. The Telephone Consumer Protection Act Applies to Debt Collectors

The TCPA contains separate provisions for calls made to residential telephone lines and calls made to wireless telephone lines. 47 U.S.C. § 227(b)(1)(B); 47 U.S.C. § 227(b)(1)(A)(iii). The prohibition relating to residential telephone lines contains express exceptions for certain calls. 47 U.S.C. § 227(b)(2)(B). The FCC, which has the authority to formulate regulations under the TCPA, has articulated the exemptions for debt collection calls made to residential lines as follows: (1) calls made between parties that have an established business relationship, and (2) calls made for commercial purposes other than unsolicited advertisements and telephone solicitations. 47 C.F.R. 64.1200(a)(2)(iii-iv); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752, 8773 ¶ 39 (1992).

Defendant cites to the legislative history of the TCPA to argue that it does not apply to telephone calls made by debt collectors. (Def.'s Mot. 4:7–8; 14–22.) Defendant relies on *Shupe v. JPMorgan Chase Bank of Arizona* for the proposition that "[t]he FCC has unequivocally stated that calls made solely for the purpose of debt collection are exempt under the TCPA" exceptions. No. CV 11-501-TUC-RCC, 2012 WL 1344786 (D. Ariz. Apr. 18, 2012) (citing *In re Rules & Regulations Implementing the TCPA*, 23 FCC Rcd. 559, 565 ¶ 5 (2008)); (Def.'s Reply 2:24–27; 3:1–2.) However, Defendant fails to distinguish between debt collection calls made to residential phone lines and those made to wireless numbers. The challenged debt collection calls in *Shupe* were made to a residential telephone number. Here, the Plaintiff alleges

that calls were made to his cellular phone.  (FAC ¶ 24, 28.)

With respect to wireless telephone calls, the TCPA clearly prohibits making "any call...using any automatic telephone dialing system or artificial or prerecorded voice...to any telephone number assigned to a...cellular telephone service..."  47 U.S.C. § 227(b)(1)(A). Defendant points to no authority stating that the statutory exceptions for residential phone calls are also applicable to wireless phone calls. As a matter of fact, "[t]here is no exception for debt collectors in the statute, nor does the statute permit any regulatory agency to make exceptions to the sections applicable to cellular numbers."  *Iniguez v. The CBE Group*, No. 2:13-cv-00843, 2013 WL 4780785, at *5 (E.D. Cal. Sept. 5, 2013).  Accordingly, the TCPA "applies to debt collectors and they may be liable for offending calls" made to wireless numbers.  *Iniguez*, 2013 WL 4780785, at *5 (citing *Blair v. CBE Group Inc.*, No. 13-CV-134-MMA(WVG), 2013 WL 2029155, at *3 (S.D. Cal. May 13, 2013)); *Jachimiec v. Regent Asset Management Solutions, N.A.*, No. 09cv2170-BTM, 2011 WL 2160661 (S.D. Cal. May 26, 2011) (stating that "[d]ebt collectors who make auto-dialed or prerecorded calls to a wireless number are subject to this prohibition") (citing *Robinson v. Midland Funding, LLC,* No. 10cv2261 MMA(MDD), U.S. Dist. LEXIS 40107, at *13–14 (S.D. Cal. Apr. 13, 2011)).

### 2. Elements of a Telephone Consumer Protection Act Claim

To state a claim under the TCPA for calls made to a cellular phone, a plaintiff must establish that: "Defendant made the call; Plaintiff was charged for the call; and the call was made using any automatic telephone dialing system or an artificial or prerecorded voice." *Knutson v. Reply!, Inc.*, No. 10-CV-1267, 2011 WL 291076, at *1 (S.D. Cal. Jan. 27, 2011). With respect to the use of an automatic telephone dialing system ("ATDS"), which is defined as equipment with the capacity to store or produce numbers to be called using a random or sequential number generator, "neither section 227(b)(1)(A)(iii) nor Federal Rule of Civil Procedure 8 requires Plaintiff to plead his claim with particularity."  47 U.S.C. § 227(a)(1); *Robinson*, 2011 WL 1434919, at *3 (citing *Kramer v. Autobytel, Inc.*, 759 F.Supp.2d 1165, 1172 (N.D. Cal. 2010)). Rather, courts consider whether, "read as a whole, the complaint contains sufficient facts to show that it is plausible that Defendants used [an ATDS]." *Kramer*,  759 F.

Supp.2d at 1171.

Here, Defendant Ocwen argues that "the FAC provides no additional facts or details about the calls to support Plaintiff's conclusion that calls were made by an automatic system." (Def.'s Mot. 5:14–18.) Although Plaintiff's allegation that the Defendant "would repeatedly call Plaintiff's cellular telephone, using an automatic dialing system or artificial/prerecorded voice to initiate the telephone call" seems conclusory on its own, courts have found similarly phrased allegations sufficient to state a claim. (FAC ¶ 24); *see e.g.*, *Robinson*, 2011 WL 1434919, at *3 (finding that a debtor stated a claim by alleging that calls were made "via an [ATDS]...using 'an artificial or prerecorded voice' for which he was charged"); *Reyes v. Saxon Mortgage Serv., Inc.*, No. 09cv1366, 2009 WL 3738177, at *4 (S.D. Cal. Nov. 5, 2009) (holding that "frequently made calls to Plaintiff's cell phone using an [ATDS]...and an artificial or prerecorded voice," of which the plaintiff bore the expense was a properly plead claim that an ATDS was used). Moreover, read as a whole, Plaintiff's first amended complaint alleges additional facts that make Defendant's use of an ATDS more plausible. Similar to the pleading in *Reyes*, Plaintiff alleges that the Defendant "repeatedly" called his cellular phone using an ATDS "at least twice a day, everyday," including over 100 times from September 2012 to October 31, 2012. (FAC ¶ 24, 28, 107.) Plaintiff also alleges that Defendant "transmitt[ed] prerecorded or artificial messages" to "initiate" each phone call. (*Id.* ¶ 24, 107.) Plaintiff further alleges that he incurred charges for each call. (*Id.*) As such, the Court finds that Plaintiff has sufficiently alleged the ATDS element of a TCPA claim.

### 3. Express Consent is not an Element of a Telephone Consumer Protection Act Claim

Express consent "is not an element of a TCPA plaintiff's *prima facie* case, but rather is an affirmative defense for which the defendant bears the burden of proof." *Robbins v. Coca-Cola-Company*, No. 13-cv-132, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013); *Shupe*, 2012 WL 1344820, at *4; *Knutson*, 2011 WL 291076, at *1. Creditors must demonstrate that the consumer provided prior express consent because they are in the best position to have records showing such consent. *Ryabyshchuk v. Citibank (South Dakota) N.A.*, No. 11-cv-1236-IEG, 2011 WL

5976239, at *5 (S.D. Cal. Nov. 28, 2011) (citing *In re Rules and Regulations Implementing the TCPA of 1991*, 23 FCC Rcd. 559, 565 (2008)). Thus, arguing that the Plaintiff provided prior express consent is an affirmative defense which does not defeat the elements of Plaintiff's claim. *Reyes*, 2009 WL 3738177, at *4.

Defendant cites to a non-controlling case in support of its argument that Plaintiff must allege that calls were made without his consent. (Def.'s Reply 4:1–18) (citing *Pugliese v. Prof'l Recovery Serv., Inc.*, No 09-12262, 2010 WL 2632562, at *7 (E.D. Mich. June 28, 2010)). However, the very next sentence in that opinion clarifies that "[t]he burden of establishing prior consent is on the defendant." *Pugliese*, 2010 WL 2632562, at *7. While the FCC notes that prior express consent is present when a consumer gives his or her number to the creditor during the transaction that resulted in the debt, *see In re Rules and Regulations Implementing the TCPA of 1991*, 23 FCC Rcd. at 564–65, this defense does not trump Plaintiff's pleading requirements for a TCPA claim. To plead a TCPA claim, Plaintiff needs only to allege two things: (1) that a cellular phone was called; (2) via an ATDS. *Robbins*, 2013 WL 2252646, at *2 (citing *Connelly v. Hilton Grand Vacations Co., LLC*, No. 12cv599 JLS, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012)). Thus, the issue of whether Plaintiff revoked his consent is irrelevant to whether or not Plaintiff has sufficiently pleaded the elements of a TCPA violation.

In sum, the TCPA applies to debt collection calls made to cellular phones. Plaintiff adequately pleads that an ATDS was used and, given that prior express consent is not an element of a TCPA claim, Plaintiff was not required to plead that such consent was lacking. Accordingly, the Court will deny Defendant's motion as to Plaintiff's TCPA cause of action.

### B.     Real Estate Settlement Procedures Act

Plaintiff's thirteenth cause of action alleges that Defendant Ocwen violated RESPA by failing to provide a written response to a letter sent from Plaintiff and two letters from Plaintiff's attorney. (FAC ¶ 115.) Defendant seeks dismissal of Plaintiff's RESPA claim for three reasons: (1) the letters from Plaintiff and his attorney lacked the factual specificity needed for a Qualified Written Request ("QWR"); (2) Defendant was unauthorized to send information to Plaintiff's counsel; and (3) Plaintiff fails to adequately allege that he suffered damages from Defendant's

failure to respond.

### 1. Qualified Written Requests

"RESPA imposes certain disclosure obligations on loan servicers who transfer or assume the servicing of a federally related mortgage loan." *Morris v. Bank of America*, No. C 09-02849, 2011 WL 250325, at *4 (N.D. Cal. Jan. 26, 2011) (citing 12 U.S.C. § 2605(b)).  Under RESPA, mortgage loan servicers must respond in writing to a Qualified Written Request ("QWR"), which is a "written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). "Any reasonably stated written request for account information can be a qualified written request." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (quoting *Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676, 687 (7th Cir. 2011)). A QWR is defined as written correspondence that:

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

Here, Plaintiff has not provided a copy of the letter that he allegedly sent to Defendant Ocwen on August 29, 2012. Moreover, Plaintiff merely alleges that his letter to Defendant was "for information related to the servicing of his loan." (FAC ¶ 112.)  Plaintiff's first amended complaint contains no factual allegations that the letter included information that would enable Defendant to identify Plaintiff's name and account information.  (*Id.* ¶ 23); *see Farias v. FCM Corp.*, No. 10cv260, 2010 WL 4806894, at *3 (S.D. Cal. Nov. 18, 2010). As such, Plaintiff has failed to establish that his August 29, 2012 letter was a QWR for purposes of his RESPA claim.

Defendant further argues that the letters from Plaintiff's attorney, sent on September 10, 2012 and October 1, 2012, do not constitute QWRs under the statute because they do not provide any statement of reasons for why Plaintiff disputes the loan amount. (Def.'s Mot. 9:1–8.) Plaintiff counters that his attorney's letters are "quite clear and stated that the account statements are inconsistent and the he requests a detailed account statement breaking down each charge, fee, and amount of interests." (Pl.'s Opp'n 16:27; 17:1–4.) Construed in the light most favorable to

Plaintiff, these letters articulate, at the very least, one reason he believed the account was in error – namely, that the account statements Plaintiff received were inconsistent. Furthermore, Plaintiff alleges who these letters were sent to, when such requests were made, that the 60 day statutory period for response has lapsed, and that Defendant failed to respond. (FAC ¶ 113–116); *see Delino v. Platinum Comm. Bank*, 628 F.Supp.2d 1226, 1232 (S.D. Cal. 2009). These letters, which accompany the first amended complaint, also clearly indicate who the borrower is and provide the account number from the Adjusted Rate Note. (Ex. 1 & 2.) As such, the two letters sent by Plaintiff's counsel fall within the definition of QWRs within the meaning of RESPA.

### 2. Authorized Third Party

Defendant cites to 15 U.S.C. § 6801, *et seq*. for the proposition that financial institutions have an affirmative duty to protect the confidentiality of a customer's nonpublic personal information; therefore, Defendant was not authorized to provide Plaintiff's attorney with the requested information. (Def.'s Mot. ¶ 8:16–18, 24–25.) However, 15 U.S.C. § 6801, et seq. "does not apply to the disclosure of nonpublic personal information 'to comply with Federal, State, or local laws ...,' such as RESPA." *Amini v. Bank of America Corp*., No. C11-0974RSL, 2013 WL 1898211, at *3 (W.D. Wash. May 6, 2013) (citing 15 U.S.C. § 6802(e)(8)). Furthermore, Defendant cites to provisions in the California Financial Code to argue that Plaintiff's counsel is a third party who is unauthorized to receive information about a debtor. (Def.'s Reply 9:13–23) (citing CAL. FIN. CODE § 4051.5(b)(2) & 4052.5). Defendant's reliance is mistaken, however, given that California Financial Code section 4052.5 has an exception for section 4056, which clearly states that "a financial institution may release nonpublic information...to persons acting in a fiduciary or representative capacity on behalf of the consumer." CAL. FIN. CODE § 4056(b)(3)(E). Given that the letters identify the attorney as Plaintiff's authorized, legal representative, Defendant was not prohibited from responding to the attorney's letters.

Moreover, loan servicers have two choices when responding to a borrower's request for information: (1) to provide the requested information, or (2) to provide "an explanation of why

the information requested is unavailable or cannot be obtained by the servicer." 12 U.S.C. § 2605(e)(2)(C)(I); *Amini*, 2013 WL 1898211, at *2. Plaintiff challenges Defendant's failure to respond to the letters at all. Defendant does not argue that it never received the letters; therefore, if, upon receipt of the letters, Defendant believed that it was legally prohibited from providing the attorney with such nonpublic information about the Plaintiff, then Defendant could have provided Plaintiff's attorney with that explanation in response.

### 3. Actual Damages

Under section 2605(f)(1), borrowers must, at a minimum, allege the "actual damages" he suffered as a result of loan servicer's failure to respond to a QWR. *See Garcia*, 676 F.Supp.2d at 909. Defendant argues that Plaintiff has not alleged any facts relating to actual damages stemming from the Defendant's failure to respond to the letters. (Def.'s Mot. ¶ 9:23–26.) Defendant's motion, however, only cites to one portion of Plaintiff's first amended complaint. (*Id.* ¶ 9:25–26 (citing FAC ¶ 118).) Plaintiff states that he "has suffered actual damages and harm resulting from Defendant's actions, including but not limited to worry, emotional distress, anxiety, humiliation, and out-of-pocket expenses to be proven at trial" and that he "has incurred reasonable and necessary costs and attorneys' fees in the preparation and prosecution of this action." (FAC ¶ 117, 119.) These are sufficient factual allegations of actual damages to state a claim under RESPA.

## IV. CONCLUSION & ORDER

In light of the foregoing, the Court **DENIES** without prejudice Defendant's motion to dismiss Plaintiff's 12th and 13th cause of action from the FAC. Defendant filed its Answer to the first amended complaint on July 9, 2013. [doc. #15] Accordingly, the assigned magistrate judge will set a time for an Early Neutral Evaluation at his earliest convenience.

**IT IS SO ORDERED.**

DATED: October 28, 2013

_____
M. James Lorenz
United States District Court Judge

1 | COPY TO:
2 | HON. MITCHELL D. DEMBIN
3 | UNITED STATES MAGISTRATE JUDGE
4 | ALL PARTIES/COUNSEL